COLUMBUS BAR ASSOCIATION *v.* MILLS.

[Cite as *Columbus Bar Assn. v. Mills,*
109 Ohio St.3d 245, 2006-Ohio-2290.]

(No. 2005–2060—Submitted January 11, 2006—Decided May 24, 2006.)

**Per Curiam.**

{¶ 1} Respondent, Melanie Mills of Columbus, Ohio, Attorney Registration No. 0062207, was admitted to the practice of law in Ohio in 1993.

{¶ 2} On December 6, 2004, relator, Columbus Bar Association, charged respondent in a two-count complaint with violations of the Code of Professional Responsibility. A panel of the Board of Commissioners on Grievances and Discipline heard the cause, including the parties' comprehensive stipulations. The panel made findings of misconduct, which the board adopted, and a recommendation, which the board modified.

### Misconduct

#### Count I (Corchinski)

{¶ 3} The misconduct charged in Count I arose from respondent's excessive billing and collection practices in Garrett Corchinski's child-custody, visitation, and support case.

{¶ 4} Corchinski consulted respondent on May 25, 2001, and paid her $1,000 as partial payment of a $1,500 retainer. Respondent failed to credit this payment to Corchinski's account. Corchinski also signed a written fee agreement that, in addition to the $1,500 retainer, specified how he would be billed for time spent on his case. Respondent would charge Corchinski $180 per hour for her time, $125 per hour for "of counsel" consultation, $90 per hour for paralegal work, $60 per hour for a law clerk's help, and $50 per hour for secretarial assistance.

{¶ 5} In July 2001, respondent misfiled a complaint in the Licking County Common Pleas Court, Domestic Relations Division. That court dismissed the case in October 2001 for lack of jurisdiction, and respondent then properly filed the complaint in the Licking County Common Pleas Court, Juvenile and Probate Division, in November 2001. Respondent charged Corchinski for her time in refiling the case and gave him no credit for her initial mistake.

{¶ 6} In continuing to represent Corchinski, respondent and her office staff performed numerous tasks and registered their services in billing records. These records reveal that on at least one occasion respondent double-billed Corchinski for the same service, that his account was never credited for the amount respondent charged to file his case in the wrong court, and that he was aggressively billed for secretarial, clerical, and other "administrative" activities. Respondent blamed the duplicate charges in part on a flawed billing software

system; however, she acknowledged her responsibility for ensuring the overall accuracy of invoiced charges.

{¶ 7} Respondent also employed questionable collection practices. In January 2002, respondent requested from her client's mother, and received, authorization to charge various fees to the mother's credit card. Then, on February 13, 2002, shortly before the final hearing in Corchinski's case, respondent directed her secretary to call Corchinski's mother with the ultimatum that if the mother did not immediately authorize an additional $750 credit card charge, respondent would not appear at the hearing on Corchinski's behalf. Under duress and upon assurances that there would be no further charges, Corchinski's mother authorized the $750 charge on her credit card.

{¶ 8} Respondent continued to wrest fees from Corchinski after the final hearing. She billed Corchinski an additional $912.50 for work she claimed to have performed that month, and, although she had substantially finished Corchinski's case, she asked him to sign a new fee agreement providing for another $1,500 retainer. The new fee agreement provided for increased billing rates for respondent and her staff and required credit card authorization to guarantee payment of "unreplenished" retainers. Corchinski declined to execute the new fee agreement.

{¶ 9} Throughout Corchinski's representation, respondent billed in excess of $6,500 for services. The charges were increased, in part, because respondent billed for elements of her overhead in addition to her hourly rate. As an example, respondent charged $75 for her time in conferring with her secretary about Corchinski's case and $25 for the secretary's time in conferring with her. She also failed to properly account for the initial $1,000 retainer that Corchinski paid her. Respondent brought the discrepancy to her attention in April 2004, however, and she promptly credited $1,000 to Corchinski's account.

{¶ 10} The parties stipulated, and the board found, that respondent had violated DR 1–102(A)(6) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law) and 2–106(A) (prohibiting a lawyer from agreeing to charge or collecting an illegal or clearly excessive fee) in connection with Count I.

### Count II (Semke)

{¶ 11} The charges in Count II arose from respondent's representation of two couples in an investment venture that eventually unraveled.

{¶ 12} In March 2001, Walter and Victoria Semke approached Frank and Madonna Hood to invest in the operation of their horse-boarding and horse-training facility. The Semkes and the Hoods asked respondent to prepare the necessary papers to accomplish their combined business objectives. Respondent

agreed to represent both couples and created a limited liability company ("H & S") to own the facility and a corporation ("T3E") to operate it. Thereafter, respondent continued to represent both couples, H & S, and T3E.

{¶ 13} Several disputes later arose among the Semkes, the Hoods, and their enterprises. These disagreements led to the Hoods' attempt to buy the Semkes out of their interest in T3E. Still representing all the parties to the transaction, respondent drafted a buyout agreement for the operating entity and arranged for her clients to execute the agreement. Although respondent stipulated that she had disclosed the attendant risks of multiple representation and that her clients had consented, respondent did not secure any written waiver from her clients.

{¶ 14} Even after the buyout, business relations among her clients continued to sour. In February 2003, the Semkes retained new legal counsel, and in May 2003, the new counsel filed a civil action against the Hoods. Respondent represented the Hoods and T3E in that action and filed a motion to dismiss, an answer and counterclaim, a motion for joinder, and a motion for a temporary retraining order on their behalf. Respondent finally withdrew as counsel for the Hoods and T3E in September 2003, several months after the Semkes' attorney moved to disqualify her.

{¶ 15} The parties stipulated, and the board found, that respondent had violated DR 5–105(B) (prohibiting a lawyer from representing multiple clients when the exercise of professional judgment on any client's behalf is likely to be adversely affected by the representation of another client).

### Recommended Sanction

{¶ 16} In recommending a sanction for respondent's misconduct, the board weighed the aggravating and mitigating factors in this case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").

{¶ 17} As aggravating factors, the board found that respondent's misconduct involved a pattern of misconduct, multiple offenses, and a failure to make restitution, as stipulated by the parties. BCGD Proc.Reg. 10(B)(1)(c), (d), and (i). The board disagreed with one stipulation, however, and found that respondent had acted with a selfish motive in overcharging Corchinski relative to Count I, an aggravating factor under BCGD Proc.Reg. 10(B)(1)(b).

{¶ 18} In mitigation, the board accepted the stipulations that respondent had no prior record of discipline and that she had established her good character apart from the underlying misconduct. BCGD Proc.Reg. 10(B)(2)(a) and (e). In support of her reputation, respondent submitted a number of character letters from lawyers, clients, and a common pleas judge, all commending her careful and

industrious work habits, honesty, and professionalism. The board further found that respondent had cooperated in the disciplinary proceedings. BCGD Proc. Reg. 10(B)(2)(d).

{¶ 19} The parties stipulated to a one-year suspension of respondent's license to practice law, all stayed on the condition that relator appoint a lawyer to monitor management practices of respondent's law office during the stayed suspension. The panel accepted this recommendation but added additional conditions to the stay of respondent's suspension—that respondent pay $1,000 in restitution to Corchinski, an amount that respondent offered to pay prior to the panel's disposition, that she commit no further professional misconduct, and that she pay the cost of the disciplinary proceedings. The board adopted the panel's recommendation, except that it declined the restitution requirement and directed respondent to instead participate in relator's fee-dispute arbitration program to resolve the amount she overcharged Corchinski.

## Review

{¶ 20} We agree that respondent violated DR 1–102(A)(6), 2–106(A), and 5–105(B), as found by the board. We further agree with the board's recommended sanction.

{¶ 21} Respondent is therefore suspended from the practice of law in Ohio for one year; however, this suspension is stayed on the conditions that during the stayed suspension she (1) permit an attorney appointed by relator to monitor management practices of her law office, (2) participate in relator's fee-dispute arbitration program to resolve the amount she overcharged Corchinski, (3) commit no further misconduct, and (4) pay the costs of the disciplinary proceeding. If respondent violates the conditions of the stay, the stay will be lifted, and respondent will serve the entire one-year suspension.

{¶ 22} Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, O'CONNOR and LANZINGER, JJ., concur.

LUNDBERG STRATTON and O'DONNELL, JJ., concur in part and dissent in part.

---

**LUNDBERG STRATTON, J., concurring in part and dissenting in part.**

{¶ 23} I concur in the majority's opinion, except that I would not require Corchinski to go through arbitration. Rather, I would require respondent to repay the $1,000 to Corchinski as recommended by the panel. Corchinski has expended enough time and expense on this matter. We have already found that respondent collected an excessive fee. Why should we require Corchinski to

obtain new counsel and go through further legal hassles to collect an overcharged fee? We should conclude this matter now.

{¶ 24} I would adopt the panel's recommendation and order restitution in the amount of $1,000, but also let Corchinski have the choice to either accept the $1,000 or pursue arbitration if he feels he is actually entitled to a greater refund.

{¶ 25} Therefore, I respectfully dissent from the portion of the opinion relating to arbitration.

O'DONNELL, J., concurs in the foregoing opinion.

———————

Bruce Campbell, Bar Counsel, and Michael J. Hardesty, for relator.

J. Greg Tipton, for respondent.